```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

**MAUSHANIA JOHNSON**                                              **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO. 3:05-CV-276BS**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS**                          **DEFENDANT**

<u>**OPINION AND ORDER**</u>

This cause is before the Court on the Motion for Summary Judgment of Defendant Mississippi Department of Corrections. Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken in part and not well taken in part and should be granted in part and denied in part.

**I.   Factual Background and Procedural History**

Plaintiff Maushania Johnson, a female, was hired as a correctional officer trainee with Defendant Mississippi Department of Correction ("MDOC") on December 2, 2002. After completing her training, Plaintiff was originally assigned to the Rankin County Correctional Facility ("Rankin Facility"). Plaintiff was later granted a lateral transfer to the Madison County Community Work Center ("Madison Facility"), where she began working on May 15, 2003.

While on duty on July 2, 2003, Plaintiff was allegedly sexually harassed by a male co-worker, Officer Andre Sias ("July 2

incident"). Plaintiff reported the incident the next day to her supervisor, Commander Valerie Buie.[1] The Internal Audit Division of the MDOC ("IAD") opened an investigation of the July 2 incident. As part of the investigation, both Plaintiff and Officer Sias took a polygraph examination. Plaintiff failed her examination while Sias passed his. Based on the results of the polygraph examination and the inability of the IAD to substantiate Plaintiff's allegations, the Deputy Commissioner of Community Correction Services, Lora Cole, made the decision to transfer Plaintiff back to the Rankin Facility. The transfer order issued by Deputy Commissioner Cole called for Plaintiff to begin work at the Rankin Facility on August 1, 2003.

However, before the transfer could take effect, two former female MDOC employees came forward and made allegations against Officer Sias similar to those made by Plaintiff. The transfer order was thus voided by MDOC Commissioner Anthony Epps on July 31, 2003, and the IAD reopened its investigation. While the second investigation was ongoing, Sias, rather than Plaintiff, was transferred to the Rankin Facility. At the conclusion of the second investigation, an administrative hearing was held and the hearing officer determined that sufficient grounds existed to terminate

---

[1] In addition to sexual harassment, Plaintiff also asserted in the incident report that Sias falsified the unit registry and count sheet by recording offender counts that never took place and that he also watched television while on duty.

Sias. Consequently, on October 10, 2003, Sias's employment with MDOC was terminated.

Prior to Sias's termination, on August 20, 2003, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") ("EEOC complaint"). The original EEOC complaint asserted that Plaintiff had been sexually harassed and that she had been treated unfairly as a result of reporting the incident.

On October 22, 2003, at approximately 12:00 a.m. Commander Buie, Lieutenant Jerry Wilder, Director Christine Gutherz, and other MDOC representatives conducted a "shakedown" inspection of the Madison County Facility.[2] Plaintiff and Officer Johnnie Figures were the officers on duty when the shakedown occurred and were allegedly observed committing the following violations of MDOC policy and procedure: (1) the officers were asleep and inattentive to the offenders; (2) offenders were not in the proper areas and were still dressed in their work clothing rather than their sleep clothing; (3) offenders were watching television and listening to a radio; (4) the tower and units were unclean and a newspaper covered a window in the tower; and (5) although the unit register indicated that an offender count had been conducted, the count

---

[2] In his deposition, Lieutenant Wilder explained that the purpose of a "shakedown" was "[t]o find contraband and make sure the officers are doing their duties." Exhibit "56" to Defendant's Motion for Summary Judgment, pp. 9-10.

sheet did not reflect a count. Exhibit "61" to Defendant's Motion for Summary Judgment.

The day after the shakedown, Commander Buie submitted memorandums to Director Gutherz, outlining the alleged violations and recommending an administrative hearing for Plaintiff and Officer Figures. Director Gutherz agreed with the charges and the request for administrative hearing for both Plaintiff and Officer Figures. Commander Buie's recommendations were then forwarded to Deputy Commissioner Cole. Without further investigation and because Plaintiff was a probationary employee, Deputy Commissioner Cole made the decision to terminate Plaintiff without a hearing. On November 14, 2003, Plaintiff was informed by letter that she was being terminated, effective November 23, 2003. Officer Figures, however, was not a probationary employee and therefore received a hearing. On November 25, 2003, the presiding hearing officer determined that Officer Figures' employment should not be terminated.

On November 25, 2003, Plaintiff amended her EEOC complaint to add a claim of retaliation, alleging that she was terminated in retaliation for filing the EEOC complaint. The EEOC rendered a Determination on October 22, 2004, finding that a violation of Title VII of the Civil of the Civil Rights Act of 1964; 28 U.S.C. § 2000e, et seq. "Title VII," had occurred. Plaintiff commenced this action against Defendant on May 3, 2005.  In her Complaint,

4

Plaintiff asserts Title VII claims of sexual harassment, retaliatory discharge, and disparate treatment against Defendant. Defendant filed the subject Motion for Summary Judgment on February 24, 2006. The Court has jurisdiction over this matter and will now consider that Motion.

**II.  Summary Judgment Standard – Employment Discrimination Case**

The Court begins by recognizing that a claim of employment discrimination can be proven through direct evidence or circumstantial evidence. However, proving discrimination through direct evidence is difficult in most cases. Crawford v. Formosa Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000)(citation omitted). Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a standard by which to analyze discrimination claims based on circumstantial evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citation omitted); Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001). This standard is known as the "McDonnell Douglas burden shifting analysis," or simply the "McDonnell Douglas analysis."

The first step in the McDonnell Douglas analysis is proof of a *prima facie* case of discrimination by the plaintiff. The tests for proving a *prima facie* case vary depending on the type of discrimination alleged. "[E]stablishment of a *prima facie* case

creates a rebuttable presumption that the employer unlawfully discriminated against the employee." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(citation omitted).

If the plaintiff establishes a *prima facie* case of discrimination, then under McDonnell Douglas the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the employment decision in issue. Patrick, 394 F.3d at 315 (citation omitted). This is a burden of *production* as opposed to a burden of *persuasion*, and no credibility assessment can be made at this phase. Reeves, 530 U.S. at 142 (citation omitted). "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." Patrick, 394 F.3d at 315 (citation omitted). However, "an employer must articulate a nondiscriminatory reason *with 'sufficient clarity*' to afford the employee a realistic opportunity to show that the reason is pretextual." Id. at 317 (emphasis in original)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The employer's proffered reason for the employment decision may be subjective in nature, but it must be more than vague and conclusory opinions about the plaintiff. Id.

If the employer meets the burden of articulating a nondiscriminatory reason for its employment decision, then the presumption of discrimination created by plaintiff's *prima facie* case is nullified, and the inquiry becomes more fact specific.

6

Patrick, 394 F.3d at 315 (citation omitted).  At this point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a *pretext for discrimination*."  Id. (emphasis added; citation omitted).

The Crawford court provided a guideline by which to measure whether an employer's reason for the employment decision was merely a pretext for discrimination.

> A mere scintilla of evidence of pretext does not create an issue of material fact in all cases.  As stated by the Supreme Court in Reeves, a plaintiff must present "*sufficient* evidence to find that the employer's asserted justification is false."  It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.  Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action.  The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination.

Crawford, 234 F.3d at 902-03 (emphasis in original; internal citations omitted).  If the plaintiff creates a genuine issue of material fact on the pretext issue, then the case must proceed to trial.  Conversely, if plaintiff fails in this endeavor, then summary judgment must be granted in defendant's favor.

The ultimate question in any employment discrimination case is of course whether the plaintiff was a victim of intentional discrimination. Reeves, 530 U.S. at 153.  Although the burdens of

7

producing evidence shift back and forth under the McDonnell Douglas analysis, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times. Id. at 143 (citation omitted).

### III.  Analysis

**A. Retaliation Claim[3]**

To state a *prima facie* case of retaliatory discharge under Title VII, a plaintiff must establish that:

> (1) [s]he engaged in protected activity, as described in Title VII; (2) [s]he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. 'Protected activity' is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.

Mota v. Univ. of Texas Houston Health Science Ctr., 261 F.3d 512, 519 (5th Cir. 2001)(citations omitted).

In the subject case, it is undisputed that Plaintiff's filing of the EEOC complaint was a protected activity and that Plaintiff's subsequent termination was an adverse employment decision. The Court therefore will proceed to the third requirement of a *prima facie* case of retaliation – whether there is a causal link between the filing of Plaintiff's EEOC complaint and her employment termination.

---

[3] The above described McDonnell Douglas scheme for discrimination claims is also applicable to Title VII retaliation claims. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).

Plaintiff contends that the close timing between the reporting of the sexual harassment and her eventual termination is sufficient to overcome the causation requirement. Proximity in time between protected activity and an adverse employment decision can create a genuine issue of fact as to whether there is a nexus between the two events. <u>Jones v. Robinson Property Group, L.P.</u>, 427 F.3d 987, 995 (5th Cir. 2005)(noting that a four-month time period has been sufficient to create the requisite causal connection). Approximately two months lapsed from when the original EEOC complaint was filed until the date Commander Buie recommended the administrative hearing for Plaintiff, which was the catalyst for Plaintiff's termination.

Further, Plaintiff urges that Commander Buie's relationship with relatives of Officer Sias motivated her to find a reason to fire Plaintiff. Plaintiff produced evidence that Commander Buie and Sias' brother, Gene Sias, a former MDOC employee who is now deceased, were "good friends" and that Gene Sias often visited Commander Buie at the Madison Facility. Exhibits "5-6" to Plaintiff's Response to Defendant's Motion for Summary Judgment. In light of this alleged relationship between Commander Buie and Gene Sias and further considering Commander Buie made her recommendation within two weeks of Sias' termination, Plaintiff reasons that Commander Buie sought to have Plaintiff fired for filing the sexual harassment complaint against Sias.

9

The Court finds that the proximity in time between the filing of the EEOC complaint and Plaintiff's termination coupled with the evidence regarding Commander Buie's relationship with Gene Sias is sufficient to create a genuine issue of fact as to the causal connection requirement.

Seeing that Plaintiff has now demonstrated a *prima facie* case of retaliation, the Court must now move to the second phase of the McDonnell Douglas analysis and consider whether Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant's asserted reasons for terminating Plaintiff were her inattentiveness and falsification of records on the night the shakedown occurred. Exhibit "77" to Defendant's Motion for Summary Judgment. The Court accepts Defendant's proffered reasons as legitimate and non-discriminatory.

The burden of production now shifts back to Plaintiff to prove that Defendant's explanation for terminating Plaintiff is merely a pretext for retaliation. To dispel Defendant's proffered reasons, Plaintiff points to Commander Buie's deposition wherein she admits that alleged false entries in the unit register were in Officer Figures' handwriting, not Plaintiffs. Exhibit "2" to Plaintiff's Response to Defendant's Motion for Summary Judgment, pp. 113-14. In addition, Plaintiff argues that the only reason articulated by Commander Buie for believing that the counts were not conducted was that the units were not clean. But, Commander Buie admitted in her deposition that the fact the units were unclean does not prove that

a count did not occur. Id. at pp. 101-03. Plaintiff further relies on statements allegedly made by Commander Buie when she entered the tower during the shakedown which question her motivation for conducting the shakedown. Plaintiff alleges that Commander Buie stated "I got you. I told you I was going to get you." Exhibit "4" to Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 218. Lieutenant Wilder confirmed that these remarks were made. Exhibit "3" to Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 21. Although Defendant claims that Commander Buie had no knowledge that Plaintiff would be on duty when the shakedown was planned, Plaintiff contends that it can be inferred from the statements made by Commander Buie that she was looking for a reason to terminate Plaintiff's employment.

The Court believes that based on the foregoing evidence relied on by Plaintiff, that a genuine issue of fact exists as to whether Defendant's asserted reason for firing Plaintiff was merely a pretext to retaliation. Therefore, Plaintiff's claim of retaliatory discharge will proceed to trial.

**B. Disparate Treatment Claim**

Before considering the merits of Plaintiff's disparate treatment claim, the Court must address Defendant's objection to to claim being asserted by Plaintiff. In its Rebuttal, Defendant argues that this claim should be stricken because it was raised for the first time in Plaintiff's Response to Defendant's Motion for Summary Judgment. However, a claim of disparate treatment was

11

sufficiently pled in Plaintiff's Complaint. See Complaint, ¶ 11. Therefore, Defendant's request to strike the claim is not well taken and the Court will proceed to the merits of the disparate treatment claim.

To demonstrate a *prima facie* claim of disparate treatment, the following requirement must be satisfied: (1) the plaintiff must be a member of a protected group; (2) the plaintiff must be qualified for the employment position in question; (3) the plaintiff must have suffered an adverse employment action; and (4) a similarly situated employee outside of the plaintiff's protected class must have been treated more favorably. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). Under the fourth prong, in work-rule violation case such as the instant matter, the plaintiff must show that "the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." Id. at 514. (internal quotation marks, brackets, ellipses and citation omitted). The plaintiff also has the option of demonstrating that he did not violate the rule or rules she was accused of violating. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995).

In the case *sub judice*, it is undisputed that Plaintiff has satisfied the first three requirements of a *prima facie* disparate

treatment claim. As for the fourth prong, Plaintiff claims that she and Officer Figures allegedly engaged in the same misconduct, yet Officer Figures, a male, was not terminated. Defendant does not dispute that Officer Figures received different treatment. Instead, Defendant argues that the different treatment was justified because Officer Figures, unlike Plaintiff, was not a probationary officer and was entitled to an administrative hearing. However, the Fifth Circuit has explained that "[t]he concept of a probationary employee, often critical in a due process case, has little relevance in a Title VII case." Smith v. Tex. Dept. of Water Res., 779 F.2d 1026, 1031 (5th Cir. 1986). Thus, the Court concludes that Plaintiff has sufficiently demonstrated, for the purpose of summary judgment, that a male employee of Defendant – Officer Figures – received more favorable treatment under nearly identical circumstances than did Plaintiff. Plaintiff has therefore established a *prima facie* case of disparate treatment.

The Court determined *supra* that a genuine issue of material fact remains as to whether Defendant's proffered explanation is pretextual. Accordingly, Plaintiff's disparate treatment claim also survives summary judgment.

**C. Sexual Harassment Claim**

Plaintiff apparently concedes the sexual harassment claim alleged in the Complaint as she fails to address it in her

Response. Accordingly, Plaintiff's claim of sexual harassment will be dismissed.

### III.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [docket entry no. 26] is hereby granted in part and denied in part. The Motion is granted in that Plaintiff's claim of sexual harassment is hereby dismissed, with prejudice. The Motion is denied in all other respects.

SO ORDERED this the 1st day of June, 2006.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

blj